**BAKER COMMODITIES, INC., a California Corporation, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 23019.

United States Court of Appeals
Ninth Circuit.

Aug. 8, 1969.

Rehearing Denied Oct. 7, 1969.

520

Carl A. Stutsman, Jr. (argued), Hill, Farrer & Burrill, Gillin & Scott, Jack R. White, Glenn M. Alperstein, Los Angeles, Cal., for appellant.

Lester B. Snyder (argued), Johnnie M. Walter, Asst. Atty. Gen., Tax Div., Lee A. Jackson, Jonathan S. Cohen, Attys., Dept. of Justice, Lester R. Uretz, Chief Counsel, IRS, Washington, D. C., for appellee.

Before BARNES and CARTER, Circuit Judges, and BYRNE,* District Judge.

JAMES M. CARTER, Circuit Judge:

This is an appeal from a decision of the Tax Court, 48 T.C. 374 (1967), in which the appellant corporation was denied a stepped up basis for assets acquired from the liquidation of three subsidiary corporations, i.e. that appellant was not entitled to use as its basis for the assets received from the subsidiary corporations in liquidation, the same amount that was paid for the stock of these corporations, but that it must use as its basis for the assets received, the same basis they had in the hands of the subsidiary corporations before liquidation. The Tax Court held that appellant was not entitled to § 334(b) (2) [1] basis treatment of assets thus transferred, since the stock in the subsidiary corporations was acquired from "a person the

---

* Hon. William M. Byrne, Senior United States District Judge, Central District of California, sitting by designation.

1. All references are to the Internal Revenue Code of 1954. The same sections are contained in 26 U.S.C. 1964 ed. with the same section numbers.

ownership of whose stock would, under section 318(a), be attributed to the person acquiring such stock." § 334(b) (3) (C).[2] We affirm the decision of the Tax Court.[3]

## THE QUESTIONS PRESENTED

There are two issues to be disposed of in this appeal: (1) whether so-called "sidewise" attribution was provided for by § 318 prior to its amendment in 1964, (Pub.L. 88–554, § 4(a), 78 Stat. 761); and (2) whether a partnership which has sold and transferred all of its assets in return for a promissory note and is collecting payments on the note and distributing the proceeds to the partners is in existence for purposes of § 318 attribution rules.

## THE FACTUAL BACKGROUND

There is no dispute as to the facts. In January 1951, Frank, Varney and Paul Jerome executed a formal partnership agreement for their business, which was known as Jerome Brothers; it has continued to exist up to the filing of this appeal.

As of March 1961, the Jerome Brothers partnership owned all of the issued and outstanding stock of Baker Commodities, Inc. (hereinafter OLD BAKER), a California corporation; all of the issued and outstanding stock of Phoenix Tallow Company, an Arizona corporation; 50% of the issued and outstanding stock of Kerman Tallow Works, a California corporation; and 50% of the issued and outstanding stock of San

2. § 334(b)(2), (3) and (4), as it was during the years at issue in this case:

"(2) Exception.—If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), and if—

(A) the distribution is pursuant to a plan of liquidation adopted—

(i) on or after June 22, 1954, and

(ii) not more than 2 years after the date of the transaction described in subparagraph (B) (or, in the case of a series of transactions, the date of the last such transaction); and

(B) stock of the distributing corporation possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote, and at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), was acquired by the distributee by purchase (as defined in paragraph (3)) during a period of not more than 12 months, then the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made. For purposes of the preceding sentence, under regulations prescribed by the Secretary or his delegate, proper adjustment in the adjusted basis of any stock shall be made for any distribution made to the distributee with respect to such stock before the adoption of the plan of liquidation, for any money received,

for any liabilities assumed or subject to which the property was received, and for other items.

(3) Purchase defined.—For purposes of paragraph (2) (B), the term 'purchase' means any acquisition of stock, but only if—

(A) the basis of the stock in the hands of the distributee is not determined (i) in whole or in part by reference to the adjusted basis of such stock in the hands of the person from whom acquired, or (ii) under section 1014(a) (relating to property acquired from a decedent),

(B) the stock is not acquired in an exchange to which section 351 applies, and

(C) the stock is not acquired from a person the ownership of whose stock would, under section 318(a), be attributed to the person acquiring such stock.

(4) Distributee defined.—For purposes of this subsection, the term 'distributee' means only the corporation which meets the 80 percent stock ownership requirements specified in section 332(b)."

3. The decision of the Tax Court was also based in the alternative on 26 U.S.C. § 334(b)(3)(B), (see note 1, supra) that the stock of two corporations was acquired "in an exchange to which section 351 applies * * *". We do not here pass on this basis of the Tax Court decision and express no opinion on whether it was erroneous.

Joaquin Packing Company, a California corporation. These entities were principally engaged in the business of rendering animal meat by-products into animal feedings fats and inedible tallow. The partnership also owned certain pieces of real property used in connection with the rendering and tallow business. The partnership also conducted business under ficititious names. In the Albuquerque, New Mexico area the partnership operated under the fictitious name of Atlas Rendering Company. In the area of Honolulu, Hawaii, it operated under the fictitious name of Pacific Rendering Company. In the Los Angeles area it operated under the fictitious name of Star Processing Company.

In the late 1950's the Jeromes began informal discussions with seven key employees in their rendering business.

On May 14, 1956, a California corporation was organized under the name American Extraction Company, but it remained dormant until May 2, 1961, at which time its name was changed to Jerome Brothers. On June 9, 1961, an application was filed by Jerome Brothers for a permit to issue its stock, to the following individuals to the extent of ten percent thereof to each. Frank Jerome, Paul Jerome, Varney Jerome, Stephen Frank Shultz, Louis J. Frederick, Walter S. Sanderson, James M. Andreoli, Laverne A. Nelson, J. E. Rickert and Jack G. Keith. Subsequent to the issuance of the permit, each of the ten individuals made a contribution of $500.00 and acquired ten percent of the issued and outstanding stock of Jerome Brothers. The name of this corporation was later changed to Baker Commodities, Inc. (hereinafter NEW BAKER). Each of said individuals have at all times since that date been owners of record of ten percent of the issued stock of New Baker.

After the stock was issued by New Baker and on June 26, 1961, a contract was entered into between the Jerome Brothers partnership, New Baker and the individual stockholders of New Baker. Under the agreement, New Baker acquired from the Jerome Brothers partnership: all of the issued and outstanding stock of Old Baker; all of the issued and outstanding stock of Phoenix Tallow Company; the partnership's 50% of the issued and outstanding stock of Kerman Tallow Works; the partnership's 50% of the capital stock in San Joaquin Packing Company, together with certain pieces of real property.

At the same time, and by agreement dated June 26, 1961, New Baker and its stockholders entered into an agreement with the R. S. Wilson Company, a California corporation under which new Baker purchased the remaining 50% of the issued and outstanding capital stock of Kerman Tallow Works and San Joaquin Packing Company.

Between June 26 and June 30, 1961, New Baker by proper resolution adopted a plan of liquidation for both Kerman Tallow Works and Old Baker. The liquidations were carried out and the assets of the corporation were distributed to New Baker in cancellation of its stock. Cost of the stock cancelled in the liquidations was apportioned to the assets transferred pursuant to § 334(b)(2).

A Panamanian corporation, known as Veronica Compania Naviera S.A., was organized by Frank, Paul and Varney Jerome, on or about August 15, 1956. The purpose of the corporation was to engage in the chartering and operation of ocean going vessels. As of the month of December, 1962, all of the issued and outstanding capital stock of Veronica was owned by Frank, Paul and Varney Jerome in equal interests. It had been actively engaged in business at all times since its organization.

By agreement dated December 20, 1962, New Baker acquired all of the issued and outstanding stock of Veronica from the Jerome brothers.

On or before December 31, 1962, Veronica was liquidated pursuant to the laws of the Republic of Panama and all of its assets and liabilities, including an agreement with a Philippine corporation known as LeGaspi giving Veronica an

exclusive right to market the products produced by such Philippine corporation, were transferred to New Baker. The purchase price of $1,100,000 paid for Veronica stock was allocated to the assets received by New Baker upon the liquidation in accordance to § 334(b)(2).

At all times during the years in question, Keith Engineering Company conducted a going business as a general partnership. Jack G. Keith owned a 50% interest, and Frank, Paul and Varney Jerome each owned a 16⅔% interest.

Manchester Medical Hospital, a limited partnership (formerly Morningside Convalescent Hospital), hereinafter called "Manchester" was created on or about January 1, 1958 for the sole purpose of constructing, owning and operating a convalescent hospital. Immediately prior to March 1, 1961, each of the Jerome brothers was a general partner of Manchester, and each owned 11.11% of the proprietary interest. Five persons—James Andreoli, Louis Frederick, Laverne Nelson, Walter Sanderson and S. F. Shultz—were limited partners each with a 4.17% interest; each also owned 10% of New Baker.

A convalescent hospital was in fact built and operated by Manchester; however, it ran into severe financial difficulties and was shut down in July 1960. On March 1, 1961, the partners sold all of the assets of the partnership to Southwest Community Hospital Association, a nonprofit corporation, hereinafter referred to as "Southwest", which was unrelated to any of Manchester's partners or any of the parties or entities involved in this action. Southwest gave a promissory note for the purchase price which was secured by a chattel mortgage and deed of trust on the hospital property.

Information returns were filed by Manchester for fiscal years 1961 and 1962. The 1961 return reported the sale of assets; the 1962 return, for fiscal year ending August 31, 1962, reported collections on the installment sale of $36,623.97. No other receipts or income were shown on the 1962 return; however, the note from Southwest was shown as an asset with an amount due of $12,500.00.

A lawyer whose firm performed services for Manchester testified his files showed that a "Satisfaction of Chattel Mortgage" was drafted for Manchester's use in February 1962. However, there was no further testimony or offer of evidence that it had ever been executed. Further, other than evidence of the partnership's discontinuance of the hospital operation in 1960 and its sale of assets in 1961, no proof was offered of any final liquidation and distribution prior to December 31, 1962.

## THE TAX COURT'S APPLICATION OF SECTION 318(a)

For a liquidation of a subsidiary corporation to be afforded treatment under § 334(b)(2), the stock acquired in the subsidiary must have been acquired by "purchase." "Purchase" is defined in § 334(b)(3); one transaction which is not classified as a "purchase" is one in which stock is acquired by the parent corporation from "a person the ownership of whose stock would, under § 318(a), be attributed to the [purchaser]."

In this case the Tax Court first attributed 51.5% of New Baker to Jerome Brothers partnership, with the result that everything the partnership owned was attributed to New Baker. Thus, the partnership's ownership in Veronica, Old Baker and Kerman was attributed to New Baker. At the time of the transactions, § 318(a) provided in part as follows:

"(2) Partnerships, estates, trusts, and corporations.—

(A) Partnerships and estates.— Stock owned, directly or indirectly, by or for a partnership or estate shall be considered as being owned proportionately by its partners or beneficiaries. Stock owned, directly or indirectly, by

or for a partner or a beneficiary of an estate shall be considered as being owned by the partnership or estate.

\* \* \* \* \* \*

(C) Corporations.—If 50 percent or more in value of the stock in a corporation is owned, directly or indirectly, by or for any person, then—

(i) such person shall be considered as owning the stock owned, directly or indirectly, by or for that corporation, in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation; and

(ii) such corporation shall be considered as owning the stock owned, directly or indirectly, by or for that person.

\* \* \* \* \* \*

(4) Constructive ownership as actual ownership.—

(A) In general.—Except as provided in subparagraph (B), stock constructively owned by a person by reason of the application of paragraph (1), (2), or (3) shall, for purposes of applying paragraph (1), (2), or (3), be treated as actually owned by such person."

30% of New Baker was attributed to the Jerome Brothers partnership, since each brother owned 10% of New Baker. Appellant does not question this application of § 318(a).

Jack Keith owned 10% of New Baker at the time of the transactions and was also an owner of 50% in the partnership Keith Engineering Company; the Jerome Brothers owned the other 50%. Since all stock owned by a partner is deemed to be owned by the partnership and all stock owned directly or indirectly by a partnership is deemed to be owned proportionally by its partners, 5% of New Baker was attributed to the Jerome Brothers partnership from Keith Engineering.

The brothers as individuals each owned 11.11% of a limited partnership, Manchester Medical Hospital at the time of the transactions. Five other partners in Manchester each owned 10% of New Baker. Applying the same rules as with Keith Engineering, 16.5% of New Baker was thus attributed from Manchester to Jerome Brothers partnership.

After the foregoing application of § 318(a), the Tax Court found that Jerome Brothers partnership owned 51.5% of New Baker; therefore, the partnership's ownership of Veronica, Old Baker and Kerman was then attributed to New Baker and § 334(b) (3) (C) was applied.

### 1. "Sidewise" Attribution.

Appellant contends that once Keith's 10% was attributed to Keith Engineering, and once the 50% owned by the five individuals was attributed to Manchester, that interest thus attributed could not then be reattributed to the Jerome brothers and then to the Jerome Brothers partnership. Appellant contends that § 318(a) was not intended by Congress to be applied in that manner to provide for this "sidewise" attribution. It points to § 318(a) (5) (C) as amended in 1964; that provision states the following;

"Stock constructively owned by a partnership \* \* \* shall not be considered as owned by it \* \* \* in order to make another the constructive owner of such stock."

The amendment with exceptions not pertinent here, was prospective only in its operation, Section 4(c) of Public Law 88–554, and appellant so concedes, but it contends that the amendment expresses the intent of Congress as to the operation of § 318 prior to the amendment. It cites us to no authority for this contention.

■ Upon examination of the statute as it existed at the time of the transactions and of scholarly writing on the subject, we hold that the Tax Court correctly applied § 318(a) in this case. Loeb, What Constitutes Ownership of Stock, 21 N.Y.U. Fed. Tax Inst. 417, 431–32 (1963); Ringel, Surrey and Warren, Attribution of Stock Ownership

in the Internal Revenue Code, 72 Harv. L.Rev. 209, 220 and 261 (1958).

2. *Existence of Manchester.*

Appellant concedes that Keith Engineering Company was in existence at the time of the transactions in 1961 and 1962; however, it contends that Manchester ceased to exist for purposes of § 318 attribution rules when it sold its convalescent hospital in March 1961.

 § 318 does not define "partnership"; the general definition of "partnership" set forth in § 7701, I.R.C., should apply. Loeb, What Constitutes Ownership of Stock, 21 N.Y.U. Fed. Tax Inst. 417, 424–25 (1963). § 7701 provides in part:

"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \* \* \*

(2) Partnership and partner.—The term "Partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization."

[The same definition appears in § 761 of Subchapter K, 26 U.S.C., which deals with the taxation of partnership income.] When determining the character of an organization for the purposes of federal taxation "the classes into which organizations are to be placed for purposes of taxation are determined under the Internal Revenue Code." Reg. § 301.-7701–1(c). Also, the term "partnership" is not "limited to the common-law meaning of" the term, "but is broader in its scope and includes groups not commonly called partnerships." *Id.* Although determining whether a partnership exists is a federal question, local law [4] applies when determining the legal relationships between persons:

" \* \* \* local law governs in determining whether the legal relationships which have been established in the formation of an organization are such that the standards are met. Thus, it is local law which must be applied in determining such matters as the legal relationships of the members of the organization among themselves and with the public at large, and the interests of the members of the organization in its assets." *Id.*

§ 7701 does not define termination of a partnership for tax purposes, but Subchapter K, in which "partnership" is defined in the same manner as in § 7701, does provide a test for determining when a partnership terminates.

"(a) General rule.—For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated.

(b) Termination.—

4. Appellant cites California cases and argues that the agency relationship between the partners was dissolved on March 1, 1961 when the assets of Manchester were sold. All of the cases cited by appellant on this subject are inapplicable to the facts of this case, either because they were prior to the adoption by California of the Uniform Partnership Act, (Stats. 1949, c. 383, p. 674) or dealt with questions as to whether a particular partner was part of the partnership agency at a particular time.

Appellant ignores the sections from the California Uniform Partnership Act existing in 1961–1962 and reading as follows in Calif.Corporations Code:

"Section 15029. *Dissolution defined.* The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

Section 15030. *Effect of dissolution.* On Dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

(1) General rule.—For purposes of subsection (a), a partnership shall be considered as terminated only if—

(A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

(B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits." I.R.C. § 708(a) and (b).

Appellant contends that the Tax Court erred when it determined that Manchester existed in 1961 and 1962; it cites § 708 to support the contention.

Appellant contends that the sale of the hospital by Manchester terminated the partnership because it was a sale of the partners' interests, i.e. "a sale or exchange of 50 percent or more of the total interest in partnership capital and profits." Appellant cites two cases which he contends supports his argument. Barran v. C.I.R., 334 F.2d 58 (5 Cir. 1964) is one of those; it is distinguishable from the case at bar. In *Barran* the court found that: (1) the sale was of a "going business"; (2) no payments were made to the partnership, but cash was paid directly to each partner at the time of the sale; and (3) the only payments made after the sale was finalized were monthly payments to each partner individually in consideration for individual covenants not to compete. Hatch's Estate v. C.I.R., 198 F.2d 26 (9 Cir. 1952) is the other case relied upon by the appellant. *Hatch's Estate* is also distinguishable from our case. In *Hatch's Estate* the court noted that the agreement recited that the subject of the sale was "all of the business and assets of Hatch Chevrolet Company, a copartnership"; the buyer agreed to "operate the business" as his own. Finally, the court found that "it was the expressed intention of the taxpayers to sell their business as a going concern and not just a specified list of their stock in trade." 198 F.2d at 29–30.

■ In our case the subject of the sale in March 1961 was a convalescent hospital which had been closed down since July of 1960. One note and one chattel mortgage were given by the buyer. The information return for Manchester in 1960 showed a sale of assets and 1961 return showed collections on the note from the buyer Southwest. The 1961 return also showed a balance due on the note of $12,500 as of August 31, 1962. Manchester did not terminate in March 1961 due to a sale of partnership interests; the sale was of assets and not a going business. Foxman v. Commissioner of Internal Revenue, 41 T.C. 535, 557 (1964), affirmed on other grounds 352 F.2d 466 (3 Cir. 1965).

■ Appellants also contend that under California law the agency relationship between the partners had ceased to exist as of the date of the sale of the hospital in March 1961; therefore, there can be no attribution of ownership through the partnership. Assuming for purposes of argument that the agency relationship did cease, the argument is without merit for the attribution rules of § 318 are not dependent upon the existence of any agency relationship between the parties or entities. See the comments on § 318 prior to amendment in Senate Report No. 1240, U.S. Code Congressional and Admin.News, pp. 3401–3402 (1964).

■ Appellant finally contends that with the sale of the hospital, the Manchester partnership ceased engaging in its principal business activity; this it contends is a termination under § 708(b) (1) (A). Cessation of a "primary purpose" is not enough under § 708; there must be "a complete cessation of all partnership business." Ginsburg v. United States, 396 F.2d 983, 988, 184 Ct.Cl. 444 (1968).

■■ Even if operations "are limited to winding up the business, the partnership is not considered terminated until the only remaining asset, cash, is distributed to the partners and all other activity ends." Kinney v. United States,

228 F.Supp. 656, 663–664 (W.D.La. 1964); affirmed per curiam 358 F.2d 738 (5 Cir. 1966); Yagoda v. C.I.R., 331 F.2d 485, 491 n.5 (2 Cir. 1964), cert. denied 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed. 2d 48 (1964). The appellant has offered no evidence of a final distribution of Manchester partnership assets prior to December 31, 1962.

Since the Manchester partnership was not terminated at the time of the liquidations in this case, it existed for the purposes of applying the attribution rules of § 318. Sorem v. Commissioner of Internal Revenue, 40 T.C. 206, 214–215 n.14 (1963), reversed on other grounds, 334 F.2d 275 (10 Cir. 1964), states:

"As we view the statute [Section 318], attribution is required by virtue of the mere *existence* of a partnership relation between corporate shareholders, and business activity has nothing to do with it. Certainly sec. 318 itself makes no reference to 'business activity' as a prerequisite for partnership attribution, and in the absence of convincing authority we are unwilling to add this judicial gloss to an already complex section of the Code."

The judgment of the Tax Court is affirmed.