PETER E. BLUM, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2738–71. Filed December 19, 1972.

*Karl W. Windhorst,* for the petitioner.
*Frank Simmons,* for the respondent.

### OPINION

FAY, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable year 1968 in the amount of $8,039.49. A certain concession having been made, the sole issue remaining for decision is the amount of corporate net operating losses deductible by petitioner under section 1374.[1]

All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings.

Peter E. Blum (petitioner) was a resident of Atlanta, Ga., at the time of the filing of the petition herein. Petitioner filed his Federal income tax return for the taxable year 1968 with the Southeast Service Center, Chamblee, Ga.

Peachtree Ltd., Inc. (hereinafter referred to as the corporation), was incorporated under the laws of the State of Georgia on December 29, 1966, for the stated purpose of "raising and racing horses."

On July 29, 1967, the corporation filed an election under section 1372 to be treated as a small business corporation. Fifty shares of $100 par value common stock were authorized and were issued by the corporation to petitioner for $5,000 on July 15, 1967. Petitioner has, at all times, been the sole stockholder, president, and treasurer. The corporation filed a Federal income tax return for the period ended November 30, 1967, showing a net operating loss of $3,719.12. On his 1967 Federal income tax return petitioner deducted the loss of $3,719.12 from the corporation.

During the corporation's taxable years 1967 and 1968 petitioner made loans totaling $3,150 to the corporation. These loans were

---

[1] All section references are to the Internal Revenue Code of 1954.

evidenced by the corporation's 6-percent demand notes and were completely repaid during the corporation's fiscal year ended November 30, 1968. In March of 1968 the corporation borrowed a total of $5,000 from the First National Bank of Atlanta on 7½-percent, 90-day notes. These loans were renewed for 90-day periods and remained outstanding on November 30, 1968.

During the period beginning on March 18, 1968, and ending November 25, 1968, the corporation borrowed money from the Citizens & Southern National Bank of Atlanta on eight notes. Payment of all notes referred to in this paragraph was guaranteed by petitioner and was secured by collateral consisting of petitioner's 200 shares of common stock of Communications Satellite Corp. and 100 shares of common stock of Kerr McGee Corp. The collateral during the taxable year 1968 had at all times a fair market value in excess of the total indebtedness of $16,500 evidenced by the notes which remained outstanding at November 30, 1968.

During most of the time in which these loans were negotiated the corporation's unaudited balance sheets disclose that liabilities exceeded assets, and from March 31, 1968, through November 30, 1968, there was a deficit balance in the stockholder's equity account.

As of November 30, 1968, the corporation had liabilities to banks in the amount of $21,500 and did not have any indebtedness to petitioner.

The corporation filed a Federal income tax return for the fiscal year ended November 30, 1968, showing a net operating loss of $12,766. On his 1968 Federal income tax return petitioner deducted a loss from the corporation of $14,214. Respondent in his notice of deficiency increased petitioner's taxable income to reflect the allowance of this deduction only to the extent of $1,281, which was petitioner's adjusted basis in the capital stock.

The corporation, with the consent of its sole shareholder, the petitioner, elected under section 1372 not to be subject to the taxes imposed by chapter 1 of the Code. In its fiscal year ending November 30, 1968, the corporation realized a net operating loss of $12,766. Section 1374(a) provides, as a general rule, that a net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from the gross income of the shareholders of such corporation. Section 1374(c) limits the extent to which an individual shareholder can reflect the corporation's losses. Specifically, a shareholder's deductible portion of the net operating loss may not exceed the sum of his adjusted basis in his stock in the electing corporation and the adjusted basis of any indebtedness of the corporation

to the stockholder.[2] At issue in the present case is the precise amount of petitioner's adjusted basis in the stock or the indebtedness of the corporation to petitioner. Petitioner originally had an equity investment in the corporation of $5,000. The basis of this investment was reduced to $1,281 when petitioner deducted $3,719.12[3] on his 1967 Federal income tax return. This reflected the corporation's loss for its taxable year of 1967. It is respondent's contention that for the year 1968 petitioner is limited to a deduction of $1,281, his remaining basis in the stock of the corporation, for any losses incurred by the corporation.

Petitioner challenges respondent's position with two alternative theories. His claim is that loans guaranteed by him which were made to the corporation by third parties were either indebtedness of the corporation to him or in substance loans to him by the third parties, followed by his capital contribution to the corporation. Petitioner in reliance on these theories contends that the basis in his stock or indebtedness must be increased and he is therefore entitled to additional loss deductions under section 1374.

Petitioner's first contention, that guaranteed notes represent corporate indebtedness to the guarantor, has been raised and correctly rejected by this Court on numerous occasions. See, for example, *William H. Perry*, 47 T.C. 159 (1966), affd. 392 F. 2d 458 (C.A. 8, 1968); *Joe E. Borg*, 50 T.C. 257 (1968); and *Milton T. Raynor*, 50 T.C. 762 (1968). As was noted in those cases, the fact that shareholders may be liable on indebtedness of a corporation to a third party does not mean that this indebtedness is "indebtedness of the corporation to the shareholder" within the meaning of section 1374(c)(2)(B).

No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. Prior to that crucial act, "liability" may exist, but not debt to the shareholders. * * * [*Milton T. Raynor, supra* at 770–771.]

In the absence of a showing that the debt in question runs "directly to the shareholder" we must reject petitioner's first contention. See *Ruth M. Prashker*, 59 T.C. 172 (1972).

Petitioner's second contention represents a new twist in a taxpayer's attempt to reap the benefits of guaranteed loans to a subchapter S corporation for purposes of the limitations imposed by section 1374-

---

[2] SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.

(c)(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation * * *, and

(B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder * * *

[3] The $0.12 discrepancy is unexplained.

(c)(2). Petitioner contends that the loans were indirect capital contributions which were in fact loans by the bank to petitioner followed by an increased capital contribution on his part, and as such the adjusted basis of his stock in the corporation must be increased to the extent of the guaranteed loans. Petitioner's only argument in this regard is that his corporation was thinly capitalized and according to an unaudited balance sheet was in fact insolvent at the time of the loans. Petitioner contends that there are numerous cases which hold that guaranteed loans to a corporation in such straits are in substance equity investments.

It is true that the respondent on numerous occasions has attempted to apply the "substance over form" doctrine and recharacterize guaranteed loans as equity investments. See *Murphy Logging Co.* v. *United States*, 378 F. 2d 222 (C.A. 9, 1967); *Santa Anita Consolidated, Inc.*, 50 T.C. 536 (1968); *Fors Farms, Inc.* v. *United States*, an unreported case (W.D. Wash. 1966, 17 A.F.T.R. 2d 222, 66–1 U.S.T.C. par. 9206); *J. Paul Smyers*, 57 T.C. 189 (1971); and *Plantation Patterns, Inc.* v. *Commissioner*, 462 F. 2d 712 (C.A. 5, 1972), affirming a Memorandum Opinion of this Court, certiorari applied for Sept. 30, 1972.

It is also true that at least on one occasion this Court has permitted the taxpayer to successfully challenge the form of his own choosing and claim that guaranteed loans were in substance an equity contribution by the taxpayer. See *J. A. Maurer, Inc.*, 30 T.C. 1273 (1958).

The question of whether advances made by a stockholder to a corporation constitute debts or contributions to capital usually arises in cases where the respondent has disallowed deductions claimed on account of the accrual or payment of alleged interest. Petitioner has not cited and we have not found any cases in which the debt-equity determination was resorted to for purposes of increasing a shareholder's loss basis in a subchapter S corporation. However, regardless of the context in which a debt-equity determination arises, we can see no distinction in principle between the case before us and the numerous cases in the area which serve as judicial guideposts. See *J. A. Maurer, Inc.*, *supra* at 1289.[4]

As we stated in *Santa Anita Consolidated, Inc.*, *supra* at 550, "Whether such debt [guaranteed debt] is to be treated as an indirect capital contribution must be resolved by an investigation of the facts in light of traditional debt-equity principles." In the present fully stipulated case, after applying many of those traditional prin-

[4] The respondent has argued that the entire equity-contribution argument espoused by petitioner is inimical to the subch. S area. Because of our holding that the facts do not warrant the applicability of this doctrine to the present case we will not consider this rather fascinating question.

ciples, we find that petitioner simply has not carried his burden of proof and has not convinced this Court that the guaranteed loans should properly be characterized as equity investments.

In determining whether a debt in form is to be considered an equity interest for tax purposes, no single factor is controlling and each case must be decided upon its own peculiar facts, with the taxpayer bearing the burden of proof. See *John Kelley Co.* v. *Commissioner,* 326 U.S. 521 (1946); *Robert W. Adams,* 58 T.C. 41 (1972); *Anthony Mennuto,* 56 T.C. 910 (1971), and numerous cases cited therein. Thin capitalization is only one of many factors indicative of an equity investment, *Rowan* v. *United States,* 219 F.2d 51 (C.A. 5, 1955), and often not one of prime importance. See, for example, *Sun Properties* v. *United States,* 220 F.2d 171 (C.A. 5, 1955), and *Baker Commodities, Inc.,* 48 T.C. 374 (1967), affd. 415 F.2d 519 (C.A. 9, 1969), certiorari denied 397 U.S. 988 (1970), where equity ratios of 310:1 and 692:1, respectively, did not compel a finding of an equity contribution. Certainly a corporation's purported insolvency at the time of a loan is evidence that the lender may be relying on the guarantor for repayment.[5] However, an unexplained guaranteed loan to an insolvent corporation does not require a finding that the loan was in fact made to the guarantor and not his corporation.[6] One factor which stands out in the case at bar is that other than the fact that the petitioner guaranteed the bank's loan to his wholly owned purported insolvent corporation there is no evidence to refute the fact that the bank expected repayment of its loan from the corporation and not the petitioner. To find that petitioner made a capital contribution of the guaranteed loans we must find that the bank in substance loaned the sums to petitioner, not the corporation, and that petitioner then proceeded to advance such funds to the corporation. See *Murphy Logging Co.* v. *United States, supra* at 224, and *Santa Anita Consolidated, Inc., supra* at 550. Based on the evidence presented we cannot make such a finding.

There were potentially innumerable witnesses who could have better informed this Court about the circumstances and expectations surrounding these loans (i.e., bank employees, petitioner, etc.). The absence of their testimony is unexplained.

The burden of proof * * * [is] upon petitioners and we cannot assume that the testimony of a critical absentee witness would have been favorable * * *. Indeed, the normal inference is that it would have been unfavorable. * * * [*Samuel Pollack,* 47 T.C. 92, 108 (1966), affd. 392 F. 2d 409 (C.A. 5, 1968).]

---

[5] Our limited research does not disclose that the banks were prohibited from making secured guaranteed loans to an insolvent corporation.

[6] There are numerous instances in which loans to deficit or insolvent corporations have been recognized as valid debts of the borrower. See, for example, *Santa Anita Consolidated, Inc.,* 50 T.C. 536, 552-553 (1968); *American Processing and Sales Co.* v. *United States,* 371 F.2d 842 (Ct. Cl. 1967); and *Richard M. Drachman* 23 T.C. 558 (1954).

See also *Wichita Terminal Elevator Co.*, 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947); and *William H. Perry, supra* at 164.

There are numerous other factors which support a finding of corporate indebtedness to the lending institutions and are therefore contradictory to petitioner's argument. The loan instruments evidenced an unconditional obligation to pay a fixed sum on a fixed maturity date. The debts bore a fixed rate of interest payable unconditionally. The debt was unsubordinated and carried no voting right. In *J. Paul Smyers, supra*, we held that all of these factors helped to support a finding that guaranteed debt was indeed a debt and not an equity interest.

Petitioner's reliance on *J. A. Maurer* and *Plantation Patterns* is misplaced. Both of those cases are distinguishable on their facts. In those cases guaranteed debts clearly were in substance equity investments and properly recharacterized by the courts as such.

*Decision will be entered under Rule 50.*