T.C. Memo. 2009-226

UNITED STATES TAX COURT

ANN M. LAPLANTE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17591-07.                    Filed October 1, 2009.

<u>Joseph Fitzgibbons</u>, for petitioner.

<u>Paul Colleran</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined a
deficiency of $1,808 in petitioner's Federal income tax for 2004
and an accuracy-related penalty of $362 under section 6662(a) for
negligence.

The deficiency arises from petitioner's reporting of her
2004 recreational gambling activities.  Petitioner reported
$4,000 in income from gambling winnings on her 2004 Form 1040,

U.S. Individual Income Tax Return, and she deducted $4,000 in gambling losses on her 2004 Schedule A, Itemized Deductions, under "Other Miscellaneous Deductions".  After examination, respondent determined that petitioner should have reported $30,170 in gross income from gambling winnings, causing an automatic computational increase in the amount of petitioner's Social Security benefits includable in income, and petitioner should have deducted $30,170 in gambling losses for 2004.

As a result, the issues for decision are:  (1) Whether petitioner's gambling winnings for 2004 were $30,170 as respondent determined; and (2) whether petitioner is liable for the section 6662(a) accuracy-related penalty for negligence for 2004.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), and all Rule references are to the Tax Court Rules of Practice and Procedure.  All amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Massachusetts at the time she filed her petition.

Petitioner is a widow and is retired.  She worked for 48 years from 1950 to 1998 for John C. Tombarello & Sons, a scrap

iron and metal facility in Lawrence, Massachusetts, retiring when the owners sold the business. Before the sale, the business employed 35 to 40 people. Petitioner's original duties included bookkeeping, but as the business grew she became the office manager and had a bookkeeper reporting to her.

When petitioner gambles, she enjoys playing the slot machines. She began slot machine gambling in earnest in 1988 on a trip to Las Vegas. While she was still employed, petitioner would vacation a couple of times a year in Las Vegas and would also travel to Atlantic City to gamble. After Foxwoods Resort Casino opened in Ledyard, Connecticut, in 1992 and after petitioner retired from her job, she eventually became a regular Foxwoods patron.

Petitioner participated in Foxwoods' loyalty program, which provided her with a Wampum Club card. Petitioner would insert the Wampum Club card into a slot machine, and the casino would track her play. She would receive Wampum points on the basis of the time she spent at the machines, not on the basis of the amount of money she spent or lost. Foxwoods has restaurants, hotel rooms, stores, and boutiques. Petitioner would use the Wampum points to purchase clothing and jewelry. Foxwoods would also provide petitioner at no charge complimentary (commonly called comp) meals, rooms, and occasional limousine rides from her home to and from the casino.

During 2004 petitioner traveled with a group of friends to Foxwoods on 25 to 30 separate occasions. Petitioner's normal practice was to spend at least 8 hours at the casino and then return home. Sometimes she would stay longer and return home after spending 2 or more full days at the casino. Typically, petitioner would start at 25 cents per wager, progress to 50 cents, then $1, and finally $5 per wager.

Whenever she won $1,200 or more from one pull (or push of a button), the casino would promptly provide her with a Form W-2G, Certain Gambling Winnings, reflecting her winnings from that one pull or push. During 2004 petitioner received 26 Forms W-2G, which reported winnings totaling $56,200. Petitioner received a Form W-2G on 22 separate days in 2004. On 4 days petitioner won two prizes of $1,200 or more, causing the casino to issue two Forms W-2G for those 4 days. A review of the dates from petitioner's summary of the Forms W-2G indicates that petitioner gambled at Foxwoods on many different days of the week, receiving at least one Form W-2G on 5 Sundays, 11 Mondays, 1 Tuesday, 2 Wednesdays, and 3 Saturdays.

Petitioner engaged an attorney to prepare her 2004 Federal income tax return, the same attorney she had used to prepare her prior years' returns. Attached to the return was a two-page document entitled "MEMORANDUM Re: W-2G" addressing petitioner's 2004 gambling activity. The first page detailed by date and

amount the winnings on each of the 26 Forms W-2G totaling $56,200. The second page was a legal memorandum providing the attorney's rationale for petitioner's including only $4,000 of the gambling winnings in her 2004 income. Petitioner did not discuss or report in income any of her gambling winnings below $1,200; neither did she include in income the fair market value of meals, rooms, limousine rides, clothing, jewelry, and the other comps she received from Foxwoods.

Petitioner reported adjusted gross income totaling $36,111 for 2004. In addition to the $4,000 in gambling winnings, petitioner's other items of income for 2004 were: Interest of $2,262; dividends of $755; refunds of State and local income taxes of $158; capital gain distributions of $78; IRA distributions of $7,197; pension and annuities of $11,367; net income from rental real estate of $1,663; and Social Security benefits of $22,758, of which $8,631 was includable in income. Petitioner also claimed itemized deductions of $12,638 on Schedule A, of which pertinent here was a deduction of $4,000 for gambling losses.

Respondent examined petitioner's 2004 Federal income tax return, determining that the correct amount of her gambling winnings and losses for 2004 was $30,170. The $30,170 consists of the total of 11 of 26 Form W-2G amounts, but the record is

silent as to why respondent chose to exclude some of the Forms W-2G and how respondent determined which ones to exclude.

Because of the adjusted gross income thresholds in section 86, Social Security and Tier 1 Railroad Retirement Benefits, the additional $26,170 in wagering income caused a computational increase to the portion of petitioner's $22,758 in Social Security benefits includable in income from $8,631 (38 percent) to $19,345 (85 percent).  As a result, respondent issued a notice of deficiency determining a deficiency of $1,808 in Federal income tax for 2004 and an accuracy-related penalty of $362 for negligence.  Petitioner timely petitioned the Court seeking a redetermination of the deficiency and the accuracy-related penalty.

At trial the Court received into evidence two documents purporting to support petitioner's claim of receiving only $4,000 in gambling winnings and $4,000 in gambling losses.  One document was an undated and untitled two-page worksheet with 33 specific dates in 2004 reflecting a dollar amount in at least one of four columns showing:  (1) Checks she cashed at the casino totaling $14,600; (2) markers totaling $42,000, which represent cash advances the casino provided to petitioner during her play in exchange for petitioner's authorization for the casino to withdraw reimbursement within 2 weeks from her checking account; (3) money market checks totaling $61,100, which petitioner cashed

before her trips to the casino to have about $2,000 to $3,000 in cash on hand when she began each visit; and (4) deposits she returned to the checking account totaling $28,600.

With respect to the deposit column, the worksheet contains a notation immediately to the right of three of the seven deposits. Next to the August 31 deposit of $2,000 is the notation "winnings", and next to the November 17 and December 11 deposits of $10,000 and $4,000, respectively, are notations indicating the deposits were transfers of funds from her money market account. The other four deposits totaling $14,600 have no notation next to them. An IRS date stamp on petitioner's 2004 Federal income tax return shows that respondent received petitioner's return on October 15, 2005. The record does not clarify whether petitioner prepared the worksheet around the end of 2004, near her tax return filing date of October 15, 2005, or in preparation for trial.

The second document is a letter dated February 22, 2005, from Foxwoods Resort Casino to petitioner printed on plain paper, not on Foxwoods' letterhead. The letter states that petitioner's win or loss total from table games was zero and that she lost a total of $35,480 at slot machines during 2004. The letter explained that "the total slot machine activity is the total coin deposited in the machines, less the total coin paid out, and less jackpots paid by hand with currency." The letter advised that

the "information is derived from the use of your Wampum Club Card as recorded in Foxwoods Resort Casino's player rating system, which is maintained for marketing purposes only."

OPINION

I.  Reporting of Gambling Winnings and Losses

Gambling winnings are includable in gross income.  Sec. 61(a); Merkin v. Commissioner, T.C. Memo. 2008-146.  The Code treats gambling losses in one of two ways.  Taxpayers engaged in the trade or business of gambling may deduct their gambling losses against their gambling winnings above the line as a trade or business expense in arriving at adjusted gross income.  Sec. 62(a)(1); Merkin v. Commissioner, supra.  In contrast, taxpayers who are not in the trade or business of gambling are typically called recreational or casual gamblers and may deduct their gambling losses less favorably below the line as an itemized deduction in arriving at taxable income.  Sec. 63(a); Merkin v. Commissioner, supra.  Irrespective whether the taxpayer is a professional or a casual gambler, "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions."  Sec. 165(d); Merkin v. Commissioner, supra; sec. 1.165-10, Income Tax Regs.

Petitioner was a recreational gambler in 2004.  See generally Merkin v. Commissioner, supra.  Petitioner argues for a different methodology for reporting her gambling winnings and

losses. Petitioner contends the summation of her individual gambling wins does not accurately reflect true winnings because she promptly plowed the individual winnings back into the casino's slot machines. In petitioner's view, a gambling session is not complete until the gambler finishes gambling for the day or weekend or weeklong visit to the casino and leaves the casino at the conclusion of the visit with either a net win or loss.

Petitioner emphasizes that the tracking of individual wins and losses is unrealistic when placing many bets at slot machines during a long session of plays. As a result, according to petitioner a gambler should net the winnings and losses from each visit to the casino. On those visits where the gambler leaves with more money than the gambler brought to the casino (here and for the rest of this opinion the term "brought" encompasses a broad definition to include cash in the gambler's pocket when the gambler arrived at the casino plus cash the gambler added at the casino from markers, ATM draws, credit card advances, and cashing checks), the gambler should recognize the net winnings for the visit in a single amount. The gambler should then total the net winning visits in a year to determine an aggregate amount to include in income as gambling winnings for that year.

Similarly, in those instances where the gambler leaves the casino with less money than brought, the gambler should recognize a net loss for the visit. The gambler should then aggregate the

net amounts from losing visits for the year and may deduct the total losses as an itemized deduction up to the total winnings from the successful gambling sessions for the year.

Applying her theory to her own situation, petitioner determined her $4,000 in gambling winnings and losses for 2004 in the following manner. Petitioner claims that on only one occasion in her 25 to 30 visits did she leave the casino with more money than she brought. On that one occasion, she won a single jackpot of $8,000 on Monday, August 30, 2004, of which Foxwoods held back 25 percent or $2,000 for petitioner's Federal income tax withholding. Petitioner claims she gambled and lost $4,000 of the winnings, and left the casino with the remaining $2,000. Consequently, according to petitioner her one net win of $2,000 plus the $2,000 in withholding represents her sole gambling winnings for the year totaling $4,000.

With respect to gambling losses for 2004, petitioner contends that she broke even or lost money on every one of her other 24 to 29 visits to the casino during the year. Petitioner claims her losses totaled much more than $4,000, but pursuant to the gambling loss limitation of section 165(d) she limited her gambling losses to the amount of her gambling winnings, $4,000, and deducted the $4,000 gambling loss as an itemized deduction for 2004.

In general, casual gamblers such as petitioner should report the gross amount of their gambling winnings as income and should deduct separately as an itemized deduction the gross amount of their gambling losses up to the amount of gambling winnings. See Merkin v. Commissioner, supra (taxpayers not in the trade or business of gambling may report gambling losses only as an itemized deduction); Hardwick v. Commissioner, T.C. Memo. 2007-359 (same); Lutz v. Commissioner, T.C. Memo. 2002-89 ("It is well settled that taxpayers [who are recreational gamblers] have a duty to report as gross income gambling winnings" and "gambling losses must be claimed as itemized deductions").

Respondent nonetheless agrees with petitioner's theory of recognizing slot machine play on the basis of net wins or losses per visit to the casino. Specifically, respondent states the following:

> [T]he better view is that a casual gambler playing a slot machine, such as the petitioner, recognizes a wagering gain or loss at the time she redeems her tokens. The fluctuating wins and losses left in play are not accessions to wealth until the taxpayer redeems her tokens and can definitively calculate the amount above or below basis (the wager) realized. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).

Respondent's agreement, however, does not mean petitioner wins the day. Respondent argues instead that petitioner's contentions fail because petitioner did not maintain adequate

records to substantiate her claims of net gambling winnings and losses.

We do not have to decide and we explicitly do not decide the propriety of petitioner's theory of income recognition from recreational slot machine play because, as discussed below, we agree with respondent that with respect to 2004, petitioners did not maintain adequate records to substantiate her claims of net gambling winnings and losses. Thus, in its essence this case is solely one of substantiation. See Gagliardi v. Commissioner, T.C. Memo. 2008-10 (concluding that that gambling case was solely "a substantiation case", with the sole issue being whether the taxpayer had substantiated the gambling losses which the Commissioner had disallowed).

II. Substantiation of Gambling Winnings

Petitioner's situation is different from the usual gambling case where the taxpayer tries to prove gambling losses greater than the amount the Commissioner allowed. See, e.g., Briseno v. Commissioner, T.C. Memo. 2009-67; Gagliardi v. Commissioner, supra; Hardwick v. Commissioner, supra. Petitioner is already at the maximum of losses that section 165(d) allows (gambling losses may not exceed reported gambling winnings). Instead, to refute respondent's determination, petitioner must establish that she had less than the $30,170 in gambling winnings that respondent determined.

In general, the Court presumes the Commissioner's determination of a deficiency in a notice of deficiency is correct, and the burden is on the taxpayer to prove otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances the taxpayer may shift the burden to the Commissioner regarding factual matters affecting tax if the taxpayer produces credible evidence and meets the other requirements of the section including maintaining records required by the Code. Sec. 7491(a). Petitioner does not argue that she satisfied the elements for a burden shift, but even if she did advance this argument, petitioner did not produce sufficient substantiation to support her claims as section 6001 requires. See Higbee v. Commissioner, 116 T.C. 438, 443 (2001). Accordingly, the burden of proof remains on petitioner to prove the $30,170 in gambling winnings that respondent determined for 2004 was in error. With respect to the accuracy-related penalty, the burden of production is on respondent. See sec. 7491(c).

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to deductions claimed on a return. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Implicit in this burden is the requirement that taxpayers must prove the amount of gambling winnings as well as losses. Schooler v. Commissioner, 68 T.C.

867, 869 (1977); <u>Donovan v. Commissioner</u>, T.C. Memo. 1965-247, affd. per curiam 359 F.2d 64 (1st Cir. 1966).

Section 6001 and the regulations thereunder require taxpayers to keep permanent records sufficient to substantiate the amounts of income, deductions, and credits shown on their income tax returns. Sec. 1.6001-1(a), Income Tax Regs. The obligation to maintain sufficient supporting records for wagering transactions is no more onerous than the recordkeeping requirements for taxpayers engaged in daily activities such as business travel and entertainment. <u>Schooler v. Commissioner</u>, <u>supra</u> at 870-871; see also <u>Rodriquez v. Commissioner</u>, T.C. Memo. 2001-36.

Petitioner's evidence consists of the following three items: (1) The undated four-column worksheet that petitioner prepared; (2) the February 22, 2005, letter from Foxwoods; and (3) petitioner's oral testimony that on only one occasion did she leave the casino with more money that she wagered. We review in turn each of these three pieces of evidence.

Petitioner relies on the four-column worksheet with the written notation "winnings" next to one deposit of $2,000 as the documentary evidence that only one of her visits to Foxwoods in 2004 resulted in a net win, and the amount of that win was $4,000 (including the $2,000 in Federal tax withholding). However, shortcomings exist with respect to this evidence. No valid

reason exists for taxpayers engaged in wagering transactions not to maintain a contemporaneous gambling diary or gambling log. Schooler v. Commissioner, supra at 870-871. Petitioner acknowledged that she did not prepare the worksheet contemporaneously, stating that she tried to "keep up with it [her recordkeeping] daily, but if not, it would have to be yearly. It would be a lot easier to go through it yearly." Petitioner was not specific as to whether she prepared the worksheet around the end of the 2004 calendar year, 10 months later when she filed her 2004 return, or 3 years later in preparation for trial.

Additionally, the worksheet was untitled, had no explanation of its purpose, and did not explain many items on the document. For instance, the worksheet showed $14,600 of deposits with no explanation, which may have been additional gambling winnings. Similarly, petitioner did not reconcile the worksheet to the winnings Foxwoods reported on the Forms W-2G.

Moreover, petitioner did not provide copies of bank statements, canceled checks, or other corroborating evidence to establish the accuracy of individual line items on the worksheet or to establish the completeness of the worksheet by reconciling the worksheet to figures supplied by the bank. Without support, the worksheet is unreliable to corroborate petitioner's claims.

The February 22, 2005, letter from Foxwoods also has shortcomings. The letter reports that petitioner lost a total of $35,480 at the slots during 2004. However, the letter provides no detail by which we could determine which of petitioner's 25 to 30 visits to the casino for the year were a net win or a net loss. Since the net win or loss per visit is the mainstay of petitioner's argument, and since Foxwoods' letter stated the casino was tracking petitioner's results, we find it curious that petitioner did not ask Foxwoods to provide, or that petitioner did not supply to the Court, a more detailed statement from Foxwoods showing the results for each visit. In summary, the letter is helpful in confirming the overall picture that petitioner lost money for 2004, a point not in dispute, but the letter does not shed light on the decisive matter regarding which of petitioner's visits were net wins or losses and in what amounts.

With respect to petitioner's testimony, petitioner claims that she walked away a winner from Foxwoods on only 1 of her 25 to 30 visits to the casino during 2004. Given the nature of gambling, where the house usually wins; Foxwoods' letter stating petitioner's overall losses for 2004; and petitioner's credible testimony, we find it likely that she lost money on most of her visits to the casino during 2004. However, a general tenor is not the same as accepting petitioner's unsupported assertion of

precisely $4,000 in income from just one win.  See Crepeau v. Commissioner, 438 F.2d 1228 (1st Cir. 1971) (uncontradicted oral testimony is not adequate to overcome insufficiently supported taxpayer statements), affg. T.C. Memo. 1969-236; Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992) (we need not accept a taxpayer's testimony in the absence of corroborating evidence).

We also note that petitioner did not call as a witness any friend with whom she traveled to Foxwoods to corroborate her testimony.  The failure to call witnesses leads to an inference that if called they would testify adversely.  Interstate Circuit, Inc. v. United States, 306 U.S. 208, 226 (1939); Bresler v. Commissioner, 65 T.C. 182, 188 (1975); Blum v. Commissioner, 59 T.C. 436, 440-441 (1972); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Moreover, respondent has already reduced the gambling winnings that Foxwoods reported for 2004 on the Forms W2-G, from $56,200 to $30,170.  Petitioner has simply not provided sufficient corroborating evidence to make an estimate beyond the reduction respondent has already determined.  See Hardwick v. Commissioner, T.C. Memo. 2007-359 (the Court should not make an estimate in a gambling case where the taxpayer's substantiation has too many omissions and discrepancies, especially where the taxpayer could have simply provided evidence from use of a casino

Players' Club card to document slot machine play during each gambling trip).  Further, respondent made the reduction even though petitioner almost certainly had many winnings below the Form W2-G threshold amount of $1,200 and despite petitioner's receiving comps from Foxwoods for some meals, hotel stays, limousine rides, and shopping.  See <u>Libutti v. Commissioner</u>, T.C. Memo. 1996-108 (comps are "increases to * * * wealth" and therefore fall within the plain meaning of section 165(d) as gains from wagering transactions).

In summary, we find that petitioner has not met her burden of proving that respondent's determination is incorrect.  Because petitioner has not provided a reasonable basis to estimate which of her visits to the casino resulted in a net win or a net loss, or the dollar amount of each outcome, to reduce income more than respondent has already done would be unguided largesse.  Therefore, we sustain respondent's determination.

III.  <u>Accuracy-Related Penalty</u>

Respondent also determined that petitioner is liable for a 20-percent accuracy-related penalty under section 6662(a) and (b)(1) for 2004 for an underpayment of income tax that results either from negligence or disregard of rules and regulations.  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and the term "disregard" includes any careless, reckless, or intentional

disregard. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is also "'a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

As noted, the Commissioner bears the burden of production with respect to penalties. Sec. 7491(c). To meet this burden, the Commissioner must produce evidence to show that it is appropriate to impose the relevant penalty. Swain v. Commissioner, 118 T.C. 358, 363 (2002); Higbee v. Commissioner, 116 T.C. at 446. Respondent has met his burden by establishing that petitioner did not keep adequate records as required by section 6001 to substantiate the amount of gambling income she reported on her 2004 Federal income tax return.

Nonetheless, a taxpayer may overcome the accuracy-related penalty if the taxpayer can show that the underpayment of income tax was due to "reasonable cause * * * and that the taxpayer acted in good faith". Sec. 6664(c)(1). The taxpayer bears the burden of proving reasonable cause. Higbee v. Commissioner, supra at 446-447. The Court decides reasonable cause and good-faith effort on a case-by-case basis, taking into account all

pertinent facts and circumstances, including the extent of the taxpayer's efforts to assess his or her proper tax liability; the taxpayer's education, knowledge, and experience; and the taxpayers' reasonable reliance on a tax professional. Higbee v. Commissioner, supra at 448; Sec. 1.6664-4(b)(1), Income Tax Regs. The extent of the taxpayer's efforts to assess the proper tax liability is generally the most important factor. Sec. 1.6664-4(b)(1), Income Tax Regs.

Good faith reliance on professional advice concerning tax laws may provide a basis for a reasonable cause defense. United States v. Boyle, 469 U.S. 241, 250-251 (1985); see also sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on professional advice is not an absolute defense to the section 6662(a) penalty. Freytag v. Commissioner, supra at 888. Reasonable cause exists where a taxpayer relies in good faith on the advice of a qualified tax adviser where the following three elements are present: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Petitioner made a good-faith effort to determine the proper tax by engaging an attorney to prepare her return, the same

attorney who had prepared her prior returns which respondent never challenged.  Petitioner's attorney was certainly competent: respondent agreed with the attorney's theory of the case that taxpayers should recognize results from slot machine play on the basis of net wins or losses per visit to the casino.

Petitioner's overall story is also credible, albeit unsupported.  That she probably did lose money on most of her visits to the casino is reflected in the fact that respondent reduced the amount of petitioner's winnings for 2004 from $56,200 to $30,170, and reflected in a reduction from 26 to 11 in the number of Forms W-2G that respondent required petitioner to recognize for 2004.

Petitioner disclosed all of her $56,200 of Form W-2G winnings to her attorney.  Petitioner relied in good faith on the attorney's judgment, disclosing to respondent on her 2004 Federal income tax return the Forms W-2G that led to the $56,200 total and attaching a memorandum describing the attorney's theory of netting wins and losses per visit to the casino.  "To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place."  United States v. Boyle, supra at 251.

In summary, we conclude that petitioner has done what a reasonable person would do under the circumstances to determine the proper tax.  Therefore, on the basis of the record before us, for all of the above reasons, we find that petitioner had reasonable cause and acted in good faith.  We do not sustain respondent's determination of an accuracy-related penalty for 2004.

To reflect our disposition of the issues,

<u>Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty</u>.