JOHN McSHAIN AND MARY McSHAIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4767-74.     Filed January 7, 1976.

*John F. Kennedy* and *Charles V. Stoelker, Jr.,* for the petitioners.

*Joseph T. Chalhoub, Howard W. Gordon,* and *Gerald V. May, Jr.,* for the respondent.

OPINION

DAWSON, *Chief Judge:* This matter is before the Court on petitioners' Motion for Summary Judgment Upon Part of the Legal Issues in Controversy filed on July 25, 1975, pursuant to Rule 121, Tax Court Rules of Practice and Procedure. After the parties filed written statements of their positions, a hearing was held in Washington, D.C., on October 15, 1975. Since no material issues of fact are presented, we must determine only whether, as a matter of law, petitioners may revoke their prior election to receive nonrecognition of gain treatment under section 1033(a)(3), I.R.C. 1954,[1] and have their Federal income tax liability for calendar year 1967 recomputed.

During 1950 petitioner John McShain purchased an 85-percent interest in a tract of real estate located in Washington, D.C. Seventeen years later the District of Columbia condemned this property and awarded him $2,890,000 for the loss of his interest. Petitioners concede that they elected to take advantage of the nonrecognition of gain provision in section 1033(a)(3) of the Code when they filed their joint Federal income tax return for calendar year 1967. This election was made in an express statement attached to petitioners' return. In accordance with this election the condemnation proceeds were timely reinvested in a 22-story hotel which John McShain built on land he leased in Philadelphia, Pa., for 35 years.

During 1968 petitioners reiterated their prior election in a letter to the District Director of Internal Revenue, Philadelphia, Pa., in which they sought an extension of time for completion of the replacement building. An extension was granted giving petitioners until December 31, 1969, to complete construction. These replacement properties subsequently were sold during 1970 in a transaction which petitioners classify as an installment sale within the meaning of section 453 of the Code.

Despite petitioners' acceptance of the benefits offered by section 1033(a), they neglected to assume the concomitant

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

burdens imposed upon electing taxpayers by section 1033(d) by failing to subtract the amount of unrecognized gain from the original property's basis when computing the replacement property's substituted basis. Consequently, an improper basis was used for the computation of both depreciation in calendar years 1969 and 1970 and gain on the replacement property's eventual sale in 1970. Respondent determined that petitioners were not entitled to utilize both sections 1033 and 453 on the facts presented and issued a statutory notice of deficiency disallowing that portion of the 1969 and 1970 depreciation deductions attributable to the unreduced basis and rejecting petitioners' claim of qualification for installment sale treatment under section 453. The deficiencies determined were $52,706.03 and $1,685,711.49 for calendar years 1969 and 1970, respectively.

On July 25, 1975, petitioners sought to revoke their prior election by filing a motion for partial summary judgment with this Court. A successful revocation would enable petitioners to qualify for more favorable tax treatment in 1970 under section 453 than, in the eyes of counsel, they will receive in 1967 if the section 1033(a)(3) election stands. Petitioners acknowledge that a general rule concerning elections has evolved from prior judicial decisions which prohibits taxpayers from making revocations to the detriment of the revenue absent express approval from the applicable statute or regulations. They contend, however, that since section 1.1033(a)-2(c)(2), Income Tax Regs., expressly permits a revocation, the general rule is not applicable in this case. Moreover, petitioners assert that they have an unlimited time period within which to revoke because (1) there is no express statute of limitations in either the statute or regulations, and (2) because section 1.1033(a)-2(c)(5), Income Tax Regs., preserves the respondent's right to assess any deficiency related to this unrecognized gain for 3 years after the District Director who processed the original return is notified of this revocation. Thus, they foresee no harm befalling respondent if we sanction unlimited revocations.

Respondent agrees that section 1.1033(a)-2(c)(2), Income Tax Regs., governs the question presented, but argues that petitioners' failure to fit within one of the three express situations set forth therein precludes a recomputation of their 1967 Federal income tax. Additionally, respondent urges that petitioners' attempt at revocation is untimely because section 1033(a)(3)(A) of the Code

and section 1.1033(a)-2(c)(2) of the regulations clearly require that an irrevocable decision whether to utilize section 1033 must be made in the return for the year in which gain was realized. Respondent argues further that an allowance of this type of revocation premised on hindsight would jeopardize our system of annual accounting for tax purposes, that he has relied in good faith upon petitioners' express commitment to replace, and that if this statute contemplated taxpayers' revocations it would expressly provide for revocation or termination as other statutes do.

Section 1033(a)(3)(A) of the Code[2] permits taxpayers suffering an involuntary conversion of property into money or unrelated property to qualify for nonrecognition of any gain arising from that disposition by making an election in accordance with regulations promulgated by the "Secretary or his delegate" and reinvesting all of the realized proceeds into replacement properties similar or related in use or service to the ones converted. Section 1.1033(a)-2(c)(2), Income Tax Regs., sets forth the guidelines pertaining to such an election:

(2) All of the details in connection with an involuntary conversion of property at a gain (including those relating to the replacement of the converted property, or a decision not to replace, or the expiration of the period for replacement) shall be reported in the return for the taxable year or years in which any of such gain is realized. An election to have such gain recognized only to the extent provided in subparagraph (1) of this paragraph shall be made by including such gain in gross income for such year or years only to such extent. If, at the time of filing such a return, the period within which the converted property must be replaced has expired, or if such an election is not desired, the

[2] SEC. 1033. INVOLUNTARY CONVERSIONS.
(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—
* * *
(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:
(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. * * *

gain should be included in gross income for such year or years in the regular manner. A failure to so include such gain in gross income in the regular manner shall be deemed to be an election by the taxpayer to have such gain recognized only to the extent provided in subparagraph (1) of this paragraph even though the details in connection with the conversion are not reported in such return. *If, after having made an election under section 1033(a)(3), the converted property is not replaced within the required period of time, or replacement is made at a cost lower than was anticipated at the time of the election, or a decision is made not to replace, the tax liability for the year or years for which the election was made shall be recomputed.* Such recomputation should be in the form of an "amended return". If a decision is made to make an election under section 1033(a)(3) after the filing of the return and the payment of the tax for the year or years in which any of the gain on an involuntary conversion is realized and before the expiration of the period within which the converted property must be replaced, a claim for credit or refund for such year or years should be filed. If the replacement of the converted property occurs in a year or years in which none of the gain on the conversion is realized, all of the details in connection with such replacement shall be reported in the return for such year or years. [Emphasis added.]

Our decision here rests upon the proper interpretation to be given this regulation and, in particular, the italicized sentence therein.

Petitioners' position is, in effect, that the qualifying language "a decision is made not to replace" encompasses all rejections of prior elections to replace, regardless of whether new property similar in use has, in fact, been acquired in the interim. According to this interpretation the decision not to replace referred to in the regulation is one of law, concerning a qualifying taxpayer's refusal to invoke section 1033(a)(3) relief[3] rather than one of fact necessarily reflecting an abandonment of plans to purchase property similar to that converted. Moreover, even though the two alternative qualifications immediately preceding the one in issue must be satisfied within a given time period, petitioners argue that no such constraint limits their ability to decide not to replace in conformity with the third qualification because none is expressed within either that clause of the sentence, the regulation, or section 1033.

Respondent contends that the foregoing analysis is defective because the regulation must be read as a whole and cannot be broken down into separate parts. In his oral argument respondent's counsel advanced the proposition that the "decision not to replace" is an available alternative only in instances in

---

[3] Taxpayers qualifying for sec. 1033(a)(1) nonrecognition relief may not elect to forego that section's benefits. See sec. 1.1033(a)-1, Income Tax Regs.

which the immediately preceding sentence deems a taxpayer to have elected section 1033(a)(3) nonrecognition relief by failing to include gain realized from an involuntary conversion in gross income in the usual manner. If adopted, this theory would eliminate petitioners' avenue for relief.

After due consideration, we must deny the petitioners' motion for a partial summary adjudication and hold that they cannot revoke their prior election to accept the nonrecognition of gain relief offered by section 1033(a)(3) of the Code. We agree with respondent that section 1.1033(a)-2(c)(2), Income Tax Regs., must be read as a whole, not as a conglomeration of unrelated rules. Although we also concur with the result respondent seeks here, we interpret the regulation in issue in a somewhat different manner. By its express terms, the italicized sentence applies to all taxpayers which "[have] made an election under section 1033(a)(3);" this includes both those taxpayers affirmatively electing to accept the benefits offered by that section and others deemed to have made such an election by failing to include gain realized in gross income in the regular manner.

Reading the italicized sentence above as a whole instead of a collection of unrelated clauses convinces us that petitioners' interpretation is incorrect. This sentence clearly uses the word "replacement" to mean *replacement in fact,* or actual reinvestment of involuntary conversion proceeds into similar property. Only under this analysis does each qualifying circumstance in the sentence play a significant, independent role in operation. A decision not to replace within the meaning of this sentence, therefore, must be made prior to such actual reinvestment; the sentence does not sanction either a decision to forego section 1033(a)(3) nonrecognition relief or a revocation of election made after a qualifying reinvestment of proceeds. The first express circumstance qualifying for recomputation of income tax liability is that in which "converted property is not replaced within the required period of time." If replacement in fact were inconsequential here, as petitioners argue, this clause and the one directly in issue would overlap in operation when a taxpayer's replacement period ended without a reinvestment having been made. Although these clauses remain partially overlapped when we hold that "replacement" means "replacement in fact," the first circumstance alone applies to situations where a taxpayer commences replacement but fails to accomplish his intended end

before the statutory period expires, and the language directly in issue covers taxpayers who previously elected nonrecognition status but now affirmatively seek to withdraw without having commenced replacement.

An issue not presented here concerns whether the Philadelphia leasehold estate qualifies as "property similar or related in service or use." If it is found that petitioners did in fact timely replace the converted property with similar properties pursuant to an admitted plan of replacement prior to reaching a decision to revoke their prior election, they will be precluded from revoking their election due to their failure to fall within the qualifying circumstances set forth in the regulation.

Implicit within the italicized sentence is a constraint limiting a qualifying taxpayer's ability to exercise his option not to replace. Since replacement means replacement in fact, and since the taxpayer must replace within the time period specified in section 1033(a)(3)(B) or forfeit nonrecognition relief, then it follows that a decision not to replace must be made within the same period but prior to any actual replacement. A taxpayer deciding not to replace after the statutory period has expired is performing a legally insignificant act which can never become effective because the operation of the first qualifying circumstance in this sentence terminates his nonrecognition option at the time period's lapse if replacement has not been accomplished. Thus, we find that petitioners' attempted revocation is untimely for this reason, as well as potentially improper if they are found to have commenced replacement in fact. Absent an extension of time petitioners' revocation period expired on December 31, 1968, because at least a part of the gain from the condemnation of their property was realized in calendar year 1967. See sec. 1033(a)(3)(B)(i). This period was extended until December 13, 1969, in accordance with section 1033(a)(3)(B)(ii) of the Code and its accompanying regulations. Petitioners' failure to revoke their prior election before December 31, 1969, foreclosed any relief to which they may otherwise have been entitled, even if they had not actually replaced the condemned property.

Taxpayers seeking to make delayed elections or revoke prior elections have received close scrutiny from the courts. Consonant with their efforts to protect our annual tax accounting system, the courts consistently have refused to permit taxpayers to alter prior positions to the detriment of the revenue once they have

had the advantage of hindsight. See, e.g., *Pacific National Co. v. Welch*, 304 U.S. 191 (1938); *J. E. Riley Investment Co. v. Commissioner*, 311 U.S. 55 (1940); *Estate of George Stamos*, 55 T.C. 468 (1970), and the cases cited therein. Although petitioners had that advantage here, they could have revoked their election if they had decided not to replace within the statutory period and if this decision preceded any replacement in fact.

This judicially developed bar to revocation comports with our interpretation of section 1.1033(a)-2(c)(2), Income Tax Regs. If a taxpayer elects to accept section 1033(a)(3) nonrecognition relief, he subsequently may make a timely revocation of that election on the basis of new information *only* if no replacement in fact has been undertaken. According to our analysis, it is replacement in fact which irrevocably manifests the taxpayer's intention to abide by his section 1033(a)(3) election. Replacement in fact crystallizes speculative uncertainties into calculable reality such that hindsight vision becomes impeccable. An unfettered ability to make postreplacement revocations would permit taxpayers to "play both ends against the middle." Section 1.1033(a)-2(c)(2), Income Tax Regs., only permits taxpayers, as a matter of legislative and administrative grace, to use hindsight during that uncertain period before replacement is begun. This provision was created to give a second chance to taxpayers deemed by the regulations to have elected section 1033(a)(3) nonrecognition because of their failure to timely report gain from an involuntary conversion. However, the express language covers other taxpayers as well, so all taxpayers qualifying under section 1033(a)(3) may have an opportunity to decide not to replace. This opportunity usually will be fleeting unless, as here, an extension of time is agreed upon. Many replacement projects are time-consuming endeavors which must be commenced soon after conversion in order to be completed within the statutory period for qualification for nonrecognition. Once replacement is begun, revocation under the clause directly in issue becomes impossible in accordance with the general prohibition against revocation of elections.

Accordingly, we hold that petitioners' attempt to revoke their section 1033(a)(3) election is untimely and they may not have their Federal income tax for calendar year 1967 recomputed.

694

Therefore, we must deny petitioners' motion for partial summary judgment.

*An appropriate order will be issued.*