JOHN MCSHAIN AND MARY MCSHAIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4767–74, 9649–75. Filed May 2, 1977.

*John F. Kennedy* and *Charles V. Stoelker, Jr.,* for the petitioners.

*Howard W. Gordon,* for the respondent.

WILES, *Judge:* On December 6, 1976, pursuant to Rule 121, Tax Court Rules of Practice and Procedure, petitioners[1] filed a motion for summary judgment upon part of the legal issues in controversy. The facts upon which petitioners based their motion were fully stipulated. Legal arguments were raised by the parties in simultaneous briefs submitted on or about March 7, 1977. The sole issue we are asked to rule upon is whether, for purposes of section 1033,[2] construction of a Holiday Inn on leased land qualifies as an appropriate replacement for real estate earlier condemned by the United States.

FINDINGS OF FACT

Much of the background relevant to this case was reported in *McShain v. Commissioner,* 65 T.C. 686 (1976), in which we ruled that petitioners could not revoke a prior election made under section 1033(a)(3) to defer the recognition of gain. Not before us at that time was whether petitioners had properly replaced the condemned property with similar property.

In 1950, John McShain purchased an undivided 85-percent interest in two parcels of unimproved real estate in Washington, D.C. (hereinafter referred to as the Washington property). The remaining undivided 15-percent interest was owned by Alexander B. Hagner. On August 15, 1950, and February 27, 1951, Hagner, as trustee, executed lease agreements leasing the Washington property to Capitol Court Corp. (hereinafter referred to as Capitol Court). These lease agreements, as modified on March 14, 1951, expired on February 1, 1967. Although the lease agreements refer to Hagner as "trustee," the parties stipulate that Capitol Court leased the Washington property from John McShain. Capitol Court was wholly owned by John McShain Charities, Inc., a private foundation

---

[1] Where appropriate the plural, "petitioners," is used in the Findings of Fact to reflect the extent of Mary McShain's activities in this case. For convenience, and since the business activities are those of John McShain, the Opinion refers only to "petitioner."

[2] Statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in question.

of which petitioner was president. Hagner was president of Capitol Court.

The lease agreements, executed by Hagner as trustee for the lessors and by Hagner as president of the lessee, were net lease agreements. Under the leases, the lessee was required to pay rent, all taxes, assessments, utility bills, and other charges relating to the land. The lessors were obligated to perform such passive duties as collection of rent and execution of applications for permits and licenses. Upon termination or expiration of the lease, title to any improvements erected by the lessee was to pass free and clear to the lessors.

On January 20, 1967, the United States of America filed a complaint in condemnation and declaration of taking in the United States District Court for the District of Columbia, naming petitioner's property under lease to Capitol Court as the property to be condemned. On May 18, 1967, the Attorney General for the United States approved a settlement of the condemnation suit for $3,400,000. On May 22, 1967, by stipulation of agreement and entry of judgment, $3 million was distributed to McShain and his wife, and Hagner and his wife. The remaining $400,000 was distributed on June 23, 1967. Of the total amount distributed, petitioners received 85 percent, or $2,890,000. As a result of this condemnation award, petitioners realized a gain of $2,616,000 in 1967.

Attached to petitioners' 1967 Federal income tax return was a statement which read in part:

STATEMENT REQUIRED PURSUANT TO PROVISIONS OF REGS.
§1.1033(a)–2(c)(2)

Taxpayer, John McShain, acquired an 85% interest in ground located at Third and Indiana Avenues, Washington, D.C. in 1950 at a cost of $274,000. The ground was then leased to Capitol Court Corporation. Capitol Court Corporation constructed a building thereon and operated the same. At the termination of the lease, February 1, 1967, the building reverted to and became the property of the owners of the reversionary estate.

\* \* \*

Taxpayer intends to reinvest the proceeds in the manner permitted by Internal Revenue Code Section 1033; and hereby elects to exclude the gain above mentioned from gross income.

No replacement of converted property has occurred as of the date of the filing of this tax return.

On December 23, 1968, petitioners wrote to the District Director of Internal Revenue, Philadelphia, Pa., and requested additional time in which to replace the condemned property. Pursuant to the District Director's subsequent request for additional information, petitioners, on March 5, 1969, responded that, "The like kind replacement property is currently under construction as a motor inn, (Holiday Inn, City Avenue, Philadelphia, Pennsylvania)." Petitioners also stated that, "As of December 31, 1968, John McShain had invested $3,700,000 in the Holiday Inn property, all of which had actually been expended for construction. Thus, the proceeds of the condemnation, amounting to a total of $2,890,000, were entirely applied to qualified reinvestment construction within the statutory replacement period." On April 3, 1969, the District Director granted petitioners an extension of time for replacement of the condemned property. Copies of the request and the favorable determination letter were attached to petitioners' 1969 Federal income tax return. Added to the bottom of the favorable determination letter that petitioners attached to their return was a notation dated April 3, 1970, stating:

*Replacement Investment in 1969:*
"HOLIDAY INN CITY LINE AVENUE—PHILADELPHIA, PENNSYLVANIA"

| | |
|---|---|
| Building cost | $6,365,304.81 |
| Elevator cost | 377,033.93 |
| Furniture, fixtures, and equipment | 1,775,774.81 |
| | 8,518,113.55 |

On November 24, 1969, petitioner, as tenant, entered into a lease agreement with Country Club Estates, Inc. This lease agreement covered real estate located in Philadelphia, Pa. (hereinafter referred to as the Philadelphia property), and had a duration of 35 years.[3] The lease agreement required an annual rent of $64,000, required the tenant, without cost to the landlord, to complete a building that would be used for hotel or motel purposes, absolved the landlord of any liability to pay for the construction or maintenance of the building, required the tenant to keep the building in good repair, to pay

---

[3] The Nov. 24, 1969, lease finalized two previous leases dated Mar. 12, 1969, and July 3, 1969.

taxes, assessments, and utility bills, and required prior approval by the landlord before the tenant could sublet the premises.

Country Club Estates, Inc., the landlord of the leased premises, was wholly owned by Atlantic City Ambassador Hotel Corp., which in turn was 95-percent owned by petitioner.

In March 1970, petitioner sold his leasehold interest in the Philadelphia property and the improvements constructed thereon. Gain from this sale was reported on the installment method under section 453. Upon audit of petitioners' 1970 Federal income tax return, respondent determined that petitioner had failed to adjust the basis of the Philadelphia property and the improvements thereon as required by section 1033(c). Consequently an improper basis was used for the computation of depreciation in calendar years 1969 and 1970, and for the computation of gain in 1970. Respondent further determined that, as a result of petitioners' election of nonrecognition under section 1033, and the concomitant basis adjustment under section 1033(c), petitioners were not entitled to report gain from the sale of the Philadelphia property on the installment method. Income tax deficiencies determined by respondent were $52,706.03 for 1969 and $1,685,711.49 for 1970.

Upon advice of counsel, petitioners, on July 25, 1975, sought to revoke their prior election under section 1033. In *McShain v. Commissioner*, 65 T.C. 686, 693 (1976), we held that petitioners' attempt to revoke their section 1033(a)(3) election was untimely. We specifically noted, however, that an issue not presented at that time was whether the Philadelphia leasehold qualified as "property similar or related in service or use" to the condemned property. Still desiring to avoid the effect of the basis adjustment under section 1033(c), petitioners now contend that the Philadelphia property was not a valid replacement for the condemned Washington property, and therefore, petitioners' section 1033 election was ineffective.

OPINION

The issue we must decide is whether petitioner made an effective election under section 1033[4] and thereby deferred recognition of gain realized upon the condemnation of the Washington property. Petitioner has been advised by counsel that it will be to his tax benefit if the section 1033 election, made in 1967, is invalid, thereby requiring petitioner to recognize gain from the condemnation sale in 1967 rather than in a subsequent year. In an attempt to show the election was invalid, petitioner makes several arguments. We have considered each of these arguments and conclude that petitioner's section 1033 election was valid, and effectively deferred the recognition of gain realized upon the condemnation of the Washington property.

Petitioner initially argues that he was not eligible to elect nonrecognition under section 1033 because he was not the entity that received the condemnation proceeds. As authority, petitioner cites *Demirjian v. Commissioner*, 457 F.2d 1 (3d Cir. 1972), affg. 54 T.C. 1691 (1970).

*Demirjian* indicates that if a partnership has property condemned, the partnership, not the individual partners, must reinvest the proceeds in order to take advantage of

---

[4] Sec. 1033 reads in part:

(a) GENERAL RULE.—If property (as a result of * * * condemnation * * *) is compulsorily or involuntarily converted—

   * * *

   (3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, * * * the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

     (A) NONRECOGNITION OF GAIN.—If the taxpayer * * * for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, * * * at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion * * * exceeds the cost of such other property * * * * * *

(g) CONDEMNATION OF REAL PROPERTY HELD FOR PRODUCTIVE USE IN TRADE OR BUSINESS OR FOR INVESTMENT.—

   (1) SPECIAL RULE.—For purposes of subsection (a), if real property * * * held for productive use in trade or business or for investment is (as the result of * * * condemnation * * *) compulsorily or involuntarily converted, property of a like kind to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted.

section 1033. Petitioner contends that he and Hagner were acting as a partnership while they owned the Washington property, and since petitioner acted in his individual capacity when he reinvested the condemnation proceeds, he was not eligible to elect nonrecognition under section 1033. Petitioner's argument is premised on a finding that he and Hagner were partners in a partnership that owned the Washington property. We cannot make such a finding.

Section 7701(a)(2) defines a partnership as an unincorporated organization which is neither an estate nor trust "through or by means of which any *business,* financial operation or venture is *carried* on." (Emphasis added.) Section 301.7701–3, Proced. & Admin. Regs., makes it clear that—

mere co-ownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. * * * Tenants in common * * * may be partners if they actively carry on a trade or business * * *. For example, a partnership exists if co-owners of an apartment building lease space *and in addition* provide services to the occupants either directly or through an agent. [Emphasis added.]

In the case before us, petitioner and Hagner purchased the Washington property as coowners, and leased it to Capitol Court on a net lease agreement. Under this agreement, the lessors were required to fulfill only passive obligations. They were not required to maintain or repair the leased property, nor were they required to provide any additional services to the lessee. Under these facts, petitioner and Hagner were coowners, not partners in a partnership. Consequently, we find *Demirjian* inapplicable.[5]

Petitioner next argues that section 1033(a)(3)(A), standing alone, cannot apply since the replacement property was not "similar or related in service or use" to the condemned property. Respondent does not contest this point. Rather,

---

[5] Additionally, we do not find that petitioner was a mere beneficiary under a trust with Hagner as trustee. Although Hagner rented the Washington property to Capitol Court and placed after his name the word "trustee," that fact is not determinative of his real status. The use of the word "trustee" appended to Hagner's name cannot be held to have the effect of making him trustee. *Johnston, Trustee v. Commissioner,* 38 B.T.A. 1199, 1210 (1938). There is no showing that Hagner acted pursuant to any trust agreement or made any investments, independent decisions, or performed any other duties commonly associated with the function of a trustee. Hagner, who executed the lease for *both* the lessor and the lessee merely acted as a representative for petitioner, not as a bona fide trustee.

respondent asserts that nonrecognition was authorized by section 1033(g) which, under limited conditions, permits the replacement property to be "like kind" rather than "similar or related in service or use."

Petitioner contends that the special provisions of section 1033(g) cannot apply since section 1033(g) is limited to condemned *real* property that is replaced by *real* property, and neither the majority of the Washington property nor the Philadelphia property owned by petitioner was real property. Further, petitioner argues that even if the condemned property and replacement property are real property, they are not "like kind."

The majority of the condemnation award received for the Washington property was attributable to the condemned building located on the Washington land. Petitionr argues that his interest in the building was a future interest rather than a present possessory interest, and therefore does not qualify as real property for purposes of section 1033(g).[6] This argument ignores the facts and the chronology of events. On January 20, 1967, the United States filed a complaint in condemnation and declaration of taking. The lease agreement between petitioner and Capitol Court expired on February 1, 1967, at which time, pursuant to the lease agreement, petitioner and Hagner became the sole owners of the building. Resolution of the lawsuit brought by the United States was not final until May 22, 1967, at which time petitioner and Hagner were the sole owners of both the Washington land and building. As sole owners of the Washington property, Hagner and petitioner received the entire proceeds of the condemnation suit and divided them according to their proportionate ownership interests. Had they owned merely a future interest in the building, the owner of the present possessory interest would have received a portion of the condemnation award. Since this did not occur, and since the condemnation suit was not settled until after the expiration of the lease, we find no merit in petitioner's contention that his interest in the Washington building was only a future interest.

---

[6] Petitioner concedes that his interest in the Washington land was a real property interest, but states that very little of the condemnation award was attributable to the land, thereby limiting the amount of the award subject to nonrecognition under sec. 1033(g).

Petitioner's final argument is that he failed to replace the condemned property with like kind property, as required by section 1033(g). In support of this argument, petitioner notes that his ownership interest in the Washington property was an 85-percent undivided interest in a fee, whereas his ownership interest in the Philadelphia property was merely a leasehold interest. Petitioner further distinguishes his interest in the properties by noting that the Washington property was a passive investment in which petitioner had no major obligations or duties. In contrast, the Philadelphia property was the site of an ongoing business that petitioner actively managed and directly operated. Although petitioner vigorously argues that the Washington property was not replaced with like kind property, we disagree.

Initially, we note that petitioner carefully selected the Philadelphia property so that it could qualify for nonrecognition under section 1033. In a letter to the District Director of Internal Revenue, petitioner noted, "The like kind replacement property is currently under construction as a motor inn (Holiday Inn, City Avenue, Philadelphia, Pennsylvania)." Attached to petitioners' 1970 Federal income tax return was a notation entitled "Replacement Investment in 1969," followed by a description of the Philadelphia property and an itemized accounting of expenditures therefor. Despite his care in selecting the replacement property, petitioner now contends that the replacement property was not like kind. We need only turn to the Internal Revenue Code and the regulations thereunder to refute petitioner's contention.

Generally section 1033(g) provides for nonrecognition of gain on condemned property if it is replaced by "like kind" property. For principles in determining whether property is like kind, sec. 1.1033(g)–1(a), Income Tax Regs., refer to section 1.1031(a)–1(c), Income Tax Regs. This latter regulation, which has "acquired the force of law," *Century Electric Co. v. Commissioner*, 192 F.2d 155, 160 (8th Cir. 1951), affg. 15 T.C. 581 (1950), cert. denied 342 U.S. 954 (1951), specifically notes that "no gain or loss is recognized if * * * a taxpayer who is not a dealer in real estate * * * exchanges a leasehold of a fee with 30 years or more to run for real estate." Under this regulation a leasehold of 30 years is considered of like kind to a fee simple interest in real estate. Consequently,

petitioner's argument that the Philadelphia property, a 35-year leasehold, was not a like kind replacement because it was a leasehold interest rather than a fee, is without merit.

Similarly, petitioner's contention that an investment property was exchanged for an actively operated business property is also without merit. As noted by section 1.1031(a)–1(a), Income Tax Regs., "property held for productive use in trade or business may be exchanged for property held for investment. Similarly, property held for investment may be exchanged for property held for productive use in trade or business."

We have considered each of petitioner's arguments and find them unpersuasive. Since the facts before us indicate that petitioner replaced the Washington property with like kind property as he originally intended, petitioner's motion for summary judgment will be denied.

*Appropriate orders will be entered.*