UNDERWRITERS INSURANCE AGENCY OF AMERICA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Underwriters Ins. Agency v. Commissioner
Docket No. 4328-77.
United States Tax Court
T.C. Memo 1980-92; 1980 Tax Ct. Memo LEXIS 493; 40 T.C.M. (CCH) 5; T.C.M. (RIA) 80092; March 25, 1980, Filed William P. Shannahan and David R. Clark, for the petitioner. Kevin M. Bagley, for the respondent. DAWSON
MEMORANDUM *494 OPINION DAWSON, Judge: Respondent determined a deficiency of $15,280 in petitioner's Federal income tax for the year 1970. The primary issue remaining for decision is whether the petitioner realized long-term capital losses on the sales of its interests in two tuna fishing vessels or ordinary losses on the sales of property used in its trade or business. The resolution of this issue depends upon whether the petitioner's ownership interests in the fishing vessels were partnership interests or were merely undivided percentage interests owned by petitioner as a tenant in common with others. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and joint exhibits are incorporated herein by this reference. The pertinent facts are summarized below. Underwriters Insurance Agency of America (petitioner) was a California corporation with its principal office located in San Diego, California, when the petition was filed in this case. Petitioner has been and is engaged in the insurance business and various other trades or businesses. One trade or business in which the petitioner held an interest *495 was the operation of tuna fishing vessels, including the M. V. Carol Virginia and the M. V. Lois Seaver.
The M. V. Lois Seaver was built in 1958 for petitioner and two other corporations. During the next twelve years the record ownership of the vessel was in petitioner's name and the other owners. Any mortgages executed with respect to the vessel were executed in the names of petitioner and the other owners. During this period the sale of any interest in the vessel was documented as a sale of a percentage interest therein. At the beginning and end of the 12-year period the petitioner held a 24 percent record interest in the vessel.Any necessary statements and applications for enrollment and license to the United States Coast Guard were made in the individual names of the record owners of the vessel. On or about December 10, 1970, petitioner sold its 24 percent record interest in the M. V. Lois Seaver to Elsinore Royalty Company. The income and expenses attributable to the operation of the M. V. Lois Seaver were reported on U.S. Partnership Returns of Income (Form 1065) for the years 1967 through 1970. The vessel was listed as a partnership asset on such returns. The returns *496 filed during that period indicate that petitioner was a partner in the partnership. In 1967, the partnership return reflects the following: Income from Sale of Fish
$411,291.64
Less Trip Expenses Including
Wages and Provisions
(237,071.02)
Less Boat Espenses
(95,950.05)
Cash Income
78,270.57
Less Depreciation
(25,975.96)
Net Profit
$ 52,294.61
Net Worth of Petitioner's Interest
at January 1, 1967
$ 67,997.17
Plus Cash Income for Period
14,871.41
Less Depreciation
(3,934.01)
Less Cash Withdrawal
(11,400.00)
Net Worth of Petitioner's Interest
at December 31, 1967
$ 67,534.57
In 1968, the partnership return reflects the following: Income from Sale of Fish
$387,550.93
Less Trip Expenses Including
Wages and Provisions
(216,702.45)
Less Boat Expenses
(103,373.03)
Cash Income
67,475.45
Less Depreciation
(22,490.29)
Net Profit
$ 44,985.16
Net Worth of Petitioner's Interest
at January 1, 1968
$ 67,534.57
Plus Cash Income
12,820.34
Less Depreciation
(3,271.74)
Less Cash Withdrawals
(13,708.30)
Net Worth of Petitioner's Interest
at December 31, 1968
$ 63,374.87
In 1969, the partnership return reflects the following: *497 Income from Sale of Fish and
Interest
314,311.22
Less Trip Expenses Including
Wages and Provisions
(181,939.54)
Less Boat Expenses
(133,016.45)
Cash Income
(644.77)
Less Depreciation
(33,919.82)
Net Loss
(34,564.59)
Capital Account of Petitioner
at January 1, 1969
$ 63,374.87
Less Ordinary Loss
(4,043.91)
Capital Account at December 31, 1969
$ 59,330.96
In 1970, the partnership return reflects the following: Income from Sale of Fish and
Interest
$471,662.88
Less Expenses (Boat & Trip)
(398,360.50)
Cash Income
73,302.38
Less Depreciation
(36,191.49)
Net Profit
$ 37,110.89
Capital Account of Petitioner
at January 1, 1970
$ 59,330.96
Plus Ordinary Income
10,140.28
Less Cash Withdrawals and
Distribution
(69,471.24)
Capital Account at December 31, 1970
0
Petitioner's interest in the M. V. Carol Virginia began in 1965 with record purchase of a 10 percent interest in the vessel from Ocean Fisheries, Inc. The M. V. Carol Virginia was built in 1958 for Ocean Fisheries, Inc. and other entities. During the period 1965 to 1970 record ownership of the vessel was in petitioner's name and the other owners. Any mortgages *498 executed with respect to the vessel were executed in the names of petitioner and the other owners. During this 5-year period the sale of any interest in the vessel was documented as a sale of a percentage interest therein. Any necessary statements and applications for enrollment and license to the United States Coast Guard were made in the individual names of the record owners of the vessel. On December 21, 1970, petitioner sold its 10 percent record interest in the vessel to Elsinore Royalty Company.
The income and expenses attributable to the operation of the M. V. Carol Virginia were reported on U.S. Partnership Returns of Income for the years 1967 through 1970. The vessel was listed as a partnership asset on such returns. The partnership returns indicate that petitioner was a partner in the partnership. In 1967, the partnership return reflects the following: Income from Sale of Fish
$413,613.46
Less Trip Expenses Including
Wages and Provisions
(230,600.13)
Less Boat Expenses
(123,044.24)
Cash Income
59,969.09
Less Depreciation
(22,146.87)
Net Profit
$ 37,822.22
Net Worth of Petitioner's
Interest at January 1, 1967
$ 50,582.09
Plus Cash Income
5,996.91
Less Depreciation
(1,817.10)
Less Cash Withdrawal
(16,000.00)
Net Worth at December 31, 1967
$ 38,761.90
*499 In 1968, the partnership return reflects the fllowing: Income from Sale of Fish
$384,739.66
Less Total Deductions
(312,834.48)
Ordinary Income
$ 71,905.18
Net Worth of Petitioner's
Interest at January 1, 1968
$ 38,761.90
Plus Cash Income
9,157.89
Less Depreciation
(1,569.78)
Less Withdrawals
(6,000.00)
Plus Added Capital
26,502.18
Net Worth at December 31, 1968
$ 66,852.19
In 1969, the partnership return reflects the following: Income from Sale of Fish and
Interest
$810,476.18
Less Trip Expenses
(474,102.13)
Less Boat Expenses
(162,916.19)
Cash Income
173,457.86
Less Depreciation
(57,155.65)
Net Profit
$116,302.21
Capital Account of Petitioner
at January 1, 1969
$ 66,852.19
Plus Ordinary Income
12,977.32
Capital Account at December 31, 1969
$ 79,829.51
In 1970, the partnership return reflects the following: Income from Sale of Fish and
Interest
$565,495.90
Less Total Expenses
(494,445.11)
Cash Income
71,050.79
Less Depreciation
(58,184.82)
Net Profit
$ 12,865.97
Capital Account of Petitioner
at January 1, 1970
$ 79,829.51
Plus Ordinary Income
3,571.06
Less Withdrawals and Distributions
(83,400.57)
Capital Account at December 31, 1970
0
*500 The expenses incurred in operating the tuna vessels included, among other things, the following: Trip Expenses
Boat Expenses
Licenses
Maintenance and Repair
Fuel and Oil
Medical Expenses
Salt
Insurance
Welfare Insurance
Property Tax
Equipment Rental
Supplies
Pension Plan
Oil Filters
Cargo Insurance
Travel Expense
Feight on Fish
Professional Fees
Crew Wages
Provisions
Tonnage Assessment
Watchman
Petitioner and the other owners did not lease the vessels to other operations but operated them and conducted the tuna fishing business. In 1969, petitioner reported partnership income of $8,933.41 on its U.S. Corporation Income Tax Return. Such partnership income was the total of its $12,977.32 income from the M. V. Carol Virginia and its $4,043.91 loss from the M. V. Lois Seaver. On its 1970 U.S. Corporation Income Tax Return the petitioner did not denominate its $10,140.28 of income from the M. V. Lois Seaver and the $3,571.06 of income from the M. V. Carol Virginia as partnership income but listed such income as "Other income-fishing vessels". In 1970 the petitioner sold its "interest" in the M. V. Lois Seaver for $46,361 and realized a *501 loss of $23,110.It also sold in that year its "interest" in the M. V. Carol Virginia for $76,405, realizing a loss of $6,996. The adjusted bases of the vessels used by petitioner in determining its losses correspond to the January 1, 1970 capital account balances reflected on the 1970 partnership returns, increased by the petitioner's distributive share of income and not reduced by the withdrawal/distribution figures appearing on the returns. The total amount ($30,106) was reported as ordinary losses of depreciable property used in petitioner's trade or business of tuna fishing. In his notice of deficiency dated February 11, 1977, respondent disallowed the claimed ordinary losses with the following explanation: It is determined that sales of your interests in the M.V. Lois Seaver and the M.V. Carol Virginia were sales of partnership interests in partnerships bearing those respecxtive names and not sales of undivided interests in assets owned by such partnerships. Accordingly, losses sustained on such sales in the amount of $23,110 with respect to the sale of your interest in the partnership M.V. Lois Seaver and in the amount of $6,996 with respect to the sale of your interest in *502 the partnership M.V. Carol Virginia are determined to be long-term capital losses rather than, as claimed in your return, ordinary losses deductible in full in 1970. Your taxable income is therefore increased by $30,106. As previously indicated, we must decide whether the petitioner's interests in the two tuna fishing vessels constituted partnership interests, as respondent contends, or merely common tenancy interests, as petitioner contends. If the interests were partnership interests, the petitioner realized long-term capital losses when the vessels were sold. On the other hand, if the interests were mere ownership interests in the vessels, the petitioner realized ordinary losses under provisions of section 1231.[1]
Section 761(a) defines a partnership to include a "syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on." See also *503 section 7701(a)(2). Section 1.761-1(a), Income Tax Regs., provides additional guidance on the definition of a partnership: (a) PARTNERSHIP.-- * * * The term "partnership" is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships. * * * A joint undertaking merely to share expenses is not a partnership. For example, if two or more persons jointly construct a ditch merely to drain surface water from their properties, they are not partners. Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if co-owners of an apartment building lease space and in addition provide *504 services to the occupants either directly or through an agent. * * * Whether a partnership exists is a question of fact. Commissioner v. Tower,327 U.S. 280 (1946). In this regard the primary inquiry is to determine whether the parties intended to create a partnership. Commissioner v. Culbertson,337 U.S. 733 (1949); Estate of Levine v. Commissioner, 72 T.C. 780, 785 (1979); McManus v. Commissioner,65 T.C. 197, 209-210 (1975); Demirjian v. Commissioner, 54 T.C. 1691, 1696-1697 (1970); Rothenberg v. Commissioner,48 T.C. 369, 372-373 (1967); Luna v. Commissioner, 42 T.C. 1067, 1077-1079 (1964).In this case respondent determined in his statutory notice of deficiency that two partnerships existed. Thus, it is the petitioner's burden to prove that such partnerships did not exist. See Demirjian v. Commissioner, supra at 1696; Rule 142(a), Tax Court Rules of Practice and Procedure.In its brief the petitioner has repeatedly asserted that respondent *505 must come forward with evidence to prove the existence of the partnerships. This is a convoluted concept of who has the burden of proof. Respondent has no affirmative obligation here to come forward with any evidence to prove the existence of the partnerships. See Dubroff and Grossman, "The United States Tax Court: An Historical Analysis, Part VI - Trial and Post-Trial Procedure", 42 Alb. L. Rev. 191, 205, (1978). Petitioner has the burden of proving that the respondent's determination was incorrect. In our view the fully stipulated facts in this record are not sufficient to hold for the petitioner. Petitioner contends that no partnerships existed because title to the vessels was held in the names of individual owners and not in partnership name; that previous transfers of any interest in the vessels were made in individual names; that its dispositions of its interests in the vessels were not documented as sales of partnership interests; that mortgages on the vessels were executed in the names of individual owners and registration and certification applications and licenses filed with the United States Coast Guard were not in partnership form. With respect to the *506 Coast Guard applications and licenses the petitioner argues that the forms utilized by it and the other owners could not be used by a partnership and, consequently, as a matter of law, the requisite intent to form a partnership was lacking. Based on this record, we are unconvinced by the petitioner's arguments. It is clear under the Uniform Partnership Act that title to partnership property need not be held in the partnership name. Likewise, the execution of a mortgage by the petitioner and the other owners of the vessels does not mean that partnerships did not exist; an inference can be drawn that the debts were merely partnership recourse liabilities. Finally, the decision by the record owners of the vessels to file nonpartnership applications is not conclusive evidence of lack of intent to form partnerships. In deciding whether a partnership exists for Federal tax purposes, the petitioner's decision to choose a nonpartnership application form and the subsequent issuance by the United States Coast Guard of licenses in its name do not bind this Court in determining the presence or absence *507 of intent to form a partnership. We think the petitioner has confused the issue of intent with the issue of label. The lack of a partnership label does not necessarily show a lack of intent to form a partnership. Whether or not the requisite intent exists is predicated on the presence or absence of evidentiary factors suggesting the joint carrying on of a business for profit. Critical in such an inquiry is an examination of the manner in which the fishing business operated here. It is plain from this record that the petitioner and the other owners did not purchase the fishing vessels and lease them to third parties on a net lease basis. Petitioner and the other owners either directly or through agents engaged in the fishing business by equipping the vessels, sending them out on fishing expeditions, selling the fish caught and paying all expenses incident to the operation of the business. The vessels were not held merely for investment nor was the petitioner a passive owner. In addition, partnership returns were filed for the two vessels from 1967 through 1970. On those returns the petitioner was listed as a partner and the vessels were treated as partnership assets. [2] A detailed *508 schedule of the expenses incurred in the operation of the fishing business appears in each return. On some of the returns the withdrawals and contributions by the various owners, including petitioner, appear. We also note that on its U.S. Corporation Income Tax Return for 1969 the petitioner reported its share of gain from the vessels as partnership income. Accordingly, we conclude that the petitioner's interests in the two tuna fishing vessels were partnership interests for Federal tax purposes. It therefore follows that the petitioner sold its interests in the partnerships and the losses should be treated as realized on the sales of capital *509 assets held for more than six months. Section 741. Hence the petitioner is only entitled to long-term capital losses. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise noted.↩
2. Depreciation on the vessels was computed on each partnership return and allocated to the named partners in percentages which did not necessarily match the percentage of cash income before deduction for depreciation was made. For example, on the 1968 M. V. Carol Virginia Partnership Return, petitioner was listed as a 10 percent owner, was allocated $9,157 of the $91,578 cash income for the period but was allocated $1,569 of $19,673 of depreciation for the period. These differing allocations have not been explained by petitioner.↩